Chris Kitchel, OSB No. 812123
ckitchel@stoel.com
Marc E. Alifanz, OSB No. 071868
mealifanz@stoel.com
Ryan S. Gibson, OSB No. 073873
rsgibson@stoel.com
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR  97204
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

Attorneys for Defendant Kaiser Foundation Health Plan of the Northwest

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JEAN CLAIRE MARKELL,<br><br>        Plaintiff,<br><br>        v.<br><br>KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST, an Oregon corporation,<br><br>        Defendant. | Civil No. CV-08-752 PK<br><br>**KAISER'S CONCISE STATEMENT OF MATERIAL FACTS** |

**KAISER'S CONCISE STATEMENT OF MATERIAL FACTS**

Pursuant to LR 56.1, defendant Kaiser Foundation Health Plan of the Northwest ("Kaiser") offers the following facts:

1. Plaintiff started working for Kaiser as a registered dental hygienist in 1990, when she was 44 years old. (Complaint ¶¶ 1, 4; Arbitrator's Opinion ("Op.") at 5.)

2. Plaintiff's supervisor was Kaiser Dental Services Manager Kari Engholm. (Op. at 6.) Ms. Engholm supervised three Kaiser dental offices. (*Id.*)

3. Plaintiff was a member of the Oregon Federation of Nurses and Health Professionals, AFT Healthcare – Local 5017 AFL-CIO ("the Union"). Her employment was governed by a Collective Bargaining Agreement (the "CBA") between Kaiser and the Union. (Declaration of Shawn Ferguson ("Ferguson Decl.") Exhibit No. 1.)

4. The CBA required that Kaiser could only terminate employment of Union members for "just cause." (CBA, Art. 8(D).) The CBA includes grievance and arbitration provisions. (*Id.*, Art. 9.) Under the CBA, the Arbitrator's decision "shall be final and binding" on Kaiser, the Union, and the employee. (*Id.*, Art. 9(C)(4).)

5. The CBA also contains an antidiscrimination provision stating that both Kaiser and the Union will not "discriminate against any employee because of such person's . . . age . . . ." (*Id.*, Art. 3(A)(1).) Employees who feel they are discriminated against in violation of the CBA's antidiscrimination provision may submit a grievance pursuant to the grievance and arbitration procedures. (*Id.*, Art. 3(A)(2).)

6. The CBA sets out progressive discipline procedures for corrective actions, ranging from the least serious, a Level 1 corrective action, to the most serious, a Level 5 termination. (*Id.*, Art. 8; Op. at 2-3.)

7. When Kaiser terminated plaintiff's employment in November 2005, she had three active corrective actions because of patient complaints (Level 2 corrective action), for twice failing to provide patients with required safety glasses (Level 3 corrective action), and for twice failing to properly fill out patient charts (Level 3 corrective action). (Op. at 6-7.)

Page 1 - **KAISER'S CONCISE STATEMENT OF MATERIAL FACTS**

8. On November 18, 2005, Kaiser terminated plaintiff's employment because she committed an intentional violation of Kaiser's confidentiality policy regarding access and use of patient records. (Ferguson Decl. ¶¶ 2, 4; Op. at 11.) Plaintiff was told in writing that the decision was "due to gross misconduct in violation of Kaiser Permanente's confidentiality policy." (Op. at 11.)

9. Plaintiff admits that she accessed and copied patient records, including records of patients assigned to other dental hygienists, and took the records off Kaiser's premises to her home. (*Id*.)

10. Pursuant to the CBA, plaintiff grieved her termination and eventually went to arbitration. (Ferguson Decl. ¶ 5; Op. at 1.) In the arbitration, plaintiff's interests were represented by Gene Mechanic and Jennifer Marston of the law firm Goldberg, Mechanic, Stuart & Gibson, LLP of Portland, Oregon. (Op. at 1.) Kaiser also was represented by counsel. (*Id*.) Pursuant to the CBA, the parties jointly selected the Arbitrator. (*Id*.)

11. The only question submitted to arbitration, as agreed to by both parties, was: "Did the Employer have just cause to terminate the employment of Jean MarKell (the Grievant) and, if not, what is the appropriate remedy?" (*Id*. at 2.)

12. An arbitration hearing was held on July 17, 2006. (*Id*. at 1.) Each side examined witnesses, and those witnesses were also cross-examined by opposing counsel. (*Id*.) Witnesses testified under oath. (*Id*.) At the hearing, hundreds of pages of documentary exhibits were introduced into the arbitration record as Exhibits B through Z. (Arb. Trans. at 5:20-21.) The hearing was recorded, and a transcript was produced, which the Arbitrator reviewed before rendering his decision. (Op. at 2, 14-18.) On October 6, 2005, attorneys for both parties submitted written post-hearing briefs to the Arbitrator. (*Id*. at 2.)

13. On October 31, 2006, the Arbitrator issued his written opinion, finding that Kaiser had "just cause" under the terms of the CBA to terminate plaintiff's employment for violations of the Kaiser confidentiality policy. (*Id*. at 11.)

Page 2 - **KAISER'S CONCISE STATEMENT OF MATERIAL FACTS**

14. The Arbitrator made factual conclusions supporting the just cause determination. He concluded that, based on plaintiff's discipline history in 2005 (*see* ¶ 7 above), her recent job performance before termination was "quite poor." (Op. at 17.) He also concluded that plaintiff, in accessing, copying, and taking home confidential patient records, acted out of personal reasons unrelated to her job responsibilities. (*Id*. at 11.) In substantiating Kaiser's finding that her conduct constituted "gross misconduct," he concluded that her actions "clearly" were "not a mere error of judgment, but an intentional or willful act in reckless disregard of the potential harmful consequences to her Employer as well as to patients." (*Id*. at 13.) He also "carefully considered" evidence that other Kaiser employees had not been terminated for violating the confidentiality policy, but concluded that those employees had not engaged in the same type of "willful or intentional misconduct" as plaintiff and therefore it was not evidence that Kaiser had applied its discipline policies unfairly to plaintiff. (*Id*. at 16-17.)

15. When asked specifically by the Arbitrator during the hearing whether they were alleging that discrimination was the basis of plaintiff's termination, her lawyers said they were not:

> Arbitrator: Are you going to make a disparate treatment argument?  In other words, is the Union going to say that other people who committed similar conduct as the grievant here were not terminated?
>
> Mr. Mechanic: [W]e're not making, we're not making a direct disparate treatment argument.  We're making a progressive discipline argument.

(Arb. Trans. at 182:1-11.)

16. Plaintiff participated in two retirement benefit plans while at Kaiser.  Ferguson Decl. ¶ 12.) The first is a defined contribution plan, in which participants vest after three continuous years of service. (*Id*.) Because plaintiff had 15 years of service she was fully vested. (*Id*.) The second was a defined benefit plan that pays out full benefits when employees reach age

Page 3 - **KAISER'S CONCISE STATEMENT OF MATERIAL FACTS**

65.  (*Id*.)  Plaintiff was terminated in 2005 and was paid the value of her defined benefit plan at that time.  (*Id*.)

    DATED:  October 28, 2008.

STOEL RIVES LLP

/s/ Ryan S. Gibson
CHRIS KITCHEL, OSB NO. 812123
MARC E  ALIFANZ, OSB NO. 071868
RYAN S. GIBSON, OSB NO. 073873
Telephone:  (503) 224-3380

Attorneys for Defendant Kaiser Foundation Health Plan of the Northwest

Page 4 - **KAISER'S CONCISE STATEMENT OF MATERIAL FACTS**

Portlnd3-1641719.2 0039460-00466