FILED

FEB 1 0 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEAN CLAIRE MARKELL,

    Plaintiff,

                                    CV 08-752-PK

                                     FINDINGS AND
v.                                  RECOMMENDATION

KAISER FOUNDATION HEALTH PLAN
OF THE NORTHWEST,

    Defendant.

_____

PAPAK, Magistrate Judge:

    This action was filed on June 20, 2008, by plaintiff Jean Claire Markell, alleging a single

claim of age discrimination under the Age Discrimination in Employment Act of 1967 against

defendant Kaiser Foundation Health Plan of the Northwest ("Kaiser"). This court has federal

question jurisdiction over Markell's claim pursuant to 28 U.S.C. § 1331.

    Now before the court is Kaiser's motion for summary judgment (#14). I have considered

Page 1 - FINDINGS AND RECOMMENDATION

the motion, oral argument on behalf of the parties, and all of the pleadings on file. For the

reasons set forth below, Kaiser's motion should be denied.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues

exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

1995), *cert. denied,* 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the

district courts of the United States must draw all reasonable inferences in favor of the nonmoving

party, and may neither make credibility determinations nor perform any weighing of the

evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v.

Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## FACTUAL BACKGROUND

Plaintiff Markell was employed by defendant Kaiser as a union-represented dental

hygienist from July 1990 through November 18, 2005. Markell was 58 years old on the effective

date of her termination.

As a Kaiser employee, Markell participated in two retirement benefit plans, one a defined

contribution plan and the other a defined benefit plan. Markell was fully vested in the former

plan at the time of her termination, but the benefit plan paid out full benefits only when

participants reached the age of 65. Upon separation from her employer, she therefore received

Page 2 - FINDINGS AND RECOMMENDATION

the full value of her contribution plan, but less than the maximum possible value of her benefit plan.

Markell's employment by Kaiser was subject to a collective bargaining agreement ("CBA") which contained provisions stating that union employees could be terminated only for "just cause" and that Kaiser would not discriminate against union members on the basis of age. In addition, the CBA required that grievances be submitted to binding arbitration. Markell grieved her termination and, accordingly, her grievance was submitted to an arbitrator.

The arbitral proceedings, which took place in July 2006, solely addressed the discrete question whether Markell had been terminated for just cause under Kaiser's progressive discipline policy; that is, the issue of possible age discrimination was not raised, and Markell expressly declined to raise a disparate treatment claim. The arbitrator ultimately decided that Markell had willfully violated Kaiser's confidentiality policy by taking copies of approximately 25 patient health records out of the workplace, and that this constituted just cause for her termination under the CBA. In addition, the arbitrator found that Markell's job performance prior to termination was "quite poor."

This action followed. In her amended complaint (#8), Markell alleges, in relevant part, as follows:

Markell was involuntarily terminated from her position.

She was terminated shortly before she could qualify for full retirement benefits.

Respondent has pursued a pattern or practice of targeting older employees, with substantial longevity for termination, before they qualify for full retirement benefits.

Kaiser disciplined Markell for conduct that did not serve as a basis for discipline

of similarly situated younger co-workers'.

Markell has a good employment record with Kaiser.

Age was a substantial motivating factor in the de[c]ision to terminate Markell.

Kaiser's conduct in terminating Markell was willful.

Amended Complaint, ¶¶ 5-11.  On the basis of these allegations, Markell asserts that her

termination was in violation of the Age Discrimination in Employment Act of 1967.

## ANALYSIS

Kaiser advances two arguments in support of its motion for summary judgment.  First,

Kaiser argues that Markell has failed to state a claim under the Age Discrimination in

Employment Act of 1967 (the "ADEA") in that, according to the argument, it is not actionable

under that statute to terminate an employee to prevent her from receiving full retirement benefits.

Second, Kaiser argues that Markell's claims are precluded because the grievance of her

termination was arbitrated, and the arbitrator decided the dispute in Kaiser's favor.  Because each

argument relies upon a demonstrably flawed legal premise, Kaiser's motion should be denied.[1]

## I.    Scope of the ADEA

The ADEA provides, in relevant part, that:

> It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any
> individual or otherwise discriminate against any individual with respect to his
> compensation, terms, conditions, or privileges of employment, because of such

---

[1] I have concerns as to whether the facts of this dispute will permit Markell to meet her
burden under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to produce evidence that
Kaiser's proffered reason for her termination – her conceded violation of Kaiser's confidentiality
policy – was mere pretext.  However, that question is not now properly before the court and
therefore should not be decided at this stage of proceedings.  Counsel for Kaiser has indicated
that Markell's ability to satisfy her burden under *McDonnell Douglas* may be the subject of a
future motion for summary judgment.

individual's age. . . .

29 U.S.C. § 623(a). That is, the ADEA prohibits covered employers from taking adverse

employment action against their employees over forty years old on the basis of their age. *See id.*

Employers are covered by the ADEA if they employ 20 or more employees. *See* 29 U.S.C. §

630(b). ADEA-prohibited disparate treatment occurs where an employee's age actually

motivates an employer to treat that employee less favorably than other, younger employees. *See,*

*e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000); *Hazen Paper Co. v.*

*Biggins*, 507 U.S. 604, 609-610 (1993). The *Reeves* court held that "the plaintiff's age must have

actually played a role in the employer's decisionmaking process and had a determinative

influence on the outcome." *Reeves*, 530 U.S. at 141 (internal modifications and quotation marks

omitted), *citing Hazen Paper*, 507 U.S. at 610.

In *Hazen Paper*, the Supreme Court expressly stated that to "fire an employee in order to

prevent his pension benefits from vesting. . . would not, without more, violate the ADEA."

*Hazen Paper*, 507 U.S. at 612-613. That is, while "[s]uch conduct is actionable under § 510 of

ERISA," it is not actionable under the ADEA to terminate an employee whose pension would

otherwise soon vest based on years of service, in order to prevent such vesting from taking place.

*Id.* at 613. Kaiser's first argument in support of summary judgment is expressly premised on this

holding.

However, the *Hazen Papaer* court explained further that:

> We do not preclude the possibility that an employer who targets employees with a
> particular pension status on the assumption that these employees are likely to be
> older thereby engages in age discrimination. Pension status may be a proxy for
> age, not in the sense that the ADEA makes the two factors equivalent, *cf. Metz* [*v.*
> *Transit Mix, Inc.*], 828 F.2d [1202,] 1208 [(7th Cir. 1987)] (using "proxy" to mean

statutory equivalence), but in the sense that the employer may suppose a correlation between the two factors and act accordingly. **Nor do we rule out the possibility of dual liability under ERISA and the ADEA where the decision to fire the employee was motivated both by the employee's age and by his pension status.** Finally, **we do not consider the special case where an employee is about to vest in pension benefits as a result of his age, rather than years of service,** *see* 1 [J.] Mamorsky, [Employee Benefits Law] § 5.02(2), and the employer fires the employee in order to prevent vesting. That case is not presented here. Our holding is simply that an employer does not violate the ADEA just by interfering with an older employee's pension benefits that would have vested by virtue of the employee's years of service.

*Id.* at 612-613 (emphasis supplied). Because, here, Markell's benefit plan was scheduled to vest as a function of her age rather than of her years of service, *Hazen Paper* clearly does not foreclose liability under the ADEA.

Moreover, although Markell's complaint does allege both that "[s]he was terminated shortly before she could qualify for full retirement benefits," Amended Complaint, ¶ 6, and that Kaiser "has pursued a pattern or practice of targeting older employees, with substantial longevity for termination, before they qualify for full retirement benefits," *id.*, ¶ 7, it alleges in addition that "[a]ge was a substantial motivating factor" in the termination decision, *id.*, ¶ 10, and that "Kaiser disciplined Markell for conduct that did not serve as a basis for discipline of similarly situated younger co-workers," *id.*, ¶ 8. These allegations describe conduct clearly actionable under the ADEA. *See* 29 U.S.C. § 623(a); *see also, e.g., Reeves*, 530 U.S. at 141; *Hazen Paper*, 507 U.S. at 609-610; *Smith v. City of Jackson*, 544 U.S. 228, 232 (2005); *EEOC v. Borden's, Inc.*, 724 F.2d 1390, 1390 (9th Cir. 1984).

Markell's allegations are supported, albeit minimally, by evidence in the record. The record contains a copy of Markell's sworn statement to the Oregon Bureau of Labor and Industries that "[her] age was a substantial motivating factor in [Kaiser]'s decision to end [her]

Page 6 - FINDINGS AND RECOMMENDATION

employment," that "[Kaiser] disciplined [her] for conduct that did not serve as a basis for discipline of similarly situated younger co-workers," that "[she] ha[d] a very good employment record with [Kaiser]," and that "[t]he reasons given for [her] termination [we]re a pretext." Interpreting this evidence in the light most favorable to Markell, a trier of fact could not reasonably conclude that Markell has failed as a matter of law to state a claim within the scope of the ADEA.  In consequence, Kaiser's motion for summary judgment should be denied to the extent premised on the argument that Markell has failed to state an ADEA claim.

## II.    Preclusive Effect of Arbitral Decision

In 1974, the United States Supreme Court held that an employee must be permitted "to pursue fully both h[er] remedy under the grievance-arbitration clause of a collective-bargaining agreement and h[er] cause of action under Title VII.  The federal court should consider the employee's claim *de novo*.  The arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 59-60 (1974).  That is, the court ruled that arbitral decisions issued pursuant to a CBA's mandatory arbitration provision are not to be given preclusive effect in any subsequent federal action, based in part on the reasoning that "a grievance is designed to vindicate a 'contractual right' under a CBA, while a lawsuit under Title VII asserts 'independent statutory rights accorded by Congress.'" *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 76 (1998), *quoting Gardner-Denver*, 415 U.S. at 49-50.  However, in 1991, the Supreme Court held that an ADEA claim could be subject to an enforceable, binding arbitration agreement. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

In 1998, the *Wright* court resolved the tension between these two cases and their

respective lines of progeny, holding that even if *Gilmer* abrogated "*Gardner-Denver*'s seemingly absolute prohibition of union waiver of employees' federal forum rights . . . , *Gardner-Denver* at least stands for the proposition that the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA." *Wright*, 525 U.S. at 80. Thus, although the *Wright* court expressly did not reach the question whether a clear and unmistakable waiver of the right to a judicial forum for Title VII claims would be enforceable, *see id.* at 82, it clearly affirmed that any waiver of judicial forum rights contained in a CBA that was *less* than "clear and unmistakable" would be treated as a nullity, *see id.* at 80-81.

Here, the record before the court contains no evidence to suggest that Markell's CBA contained a clear and unmistakable waiver of Markell's right to a judicial forum. In the absence of such a waiver, the arbitral decision of Markell's grievance is without preclusive effect, and judicial determination of her claim should proceed *de novo*.[2] *See Gardner-Denver*, 415 U.S. at 59-60; *Wright*, 525 U.S. at 80. Because the arbitral decision is without preclusive effect as a matter of law, Kaiser's motion for summary judgment should be denied to the extent premised on any theory of issue or claim preclusion.

## CONCLUSION

For the reasons set forth above, I recommend that the motion for summary judgment (#14) filed by defendant Kaiser be denied.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District

---

[2] Naturally, the decision remains admissible as evidence in any determination of the merits of Markell's federal statutory claim. *See Gardner-Denver*, 415 U.S. at 59-60.

Page 8 - FINDINGS AND RECOMMENDATION

Judge for review.  Objections, if any, are due February 24, 2009.  If no objections are filed,

review of the Findings and Recommendation will go under advisement on that date.  If

objections are filed, a response to the objections is due fourteen days after the date the objections

are filed and the review of the Findings and Recommendation will go under advisement on that

date.

Dated this 9th day of February, 2009.

Honorable Paul Papak
United States Magistrate Judge